United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff,<br><br>v.<br><br>Hebor Waters, Danny Carton-Thyne Lewis, Bayron Jose Turez Maliano, and Lenward Martinez,<br>Defendants. | )<br>)<br>)<br>)   Criminal Case No.<br>)   21-20582-CR-Scola<br>)<br>)<br>)<br>) |

**Order**

This matter is before the Court on the Defendants' joint motion to dismiss the indictment. (ECF No. 47.) The Government responded to the motion on April 25, 2022. (ECF No. 50.) After careful consideration of the briefs, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 47**.)

1. **Background**

In November 2021, about 97 nautical miles southeast of Costa Rica, a U.S. Coast Guard team intercepted a vessel with no indicia of nationality under suspicions of drug importation and distribution activities. The vessel had four crewmembers—the Defendants in this case. Upon boarding, one of the crewmembers represented that the vessel was registered in Costa Rica. However, when contacted by the United States, Costa Rica could neither confirm nor deny the nationality of the vessel. The Coast Guard subsequently recovered several bales that weighed approximately 1587 kilograms and tested positive for the presence of marijuana.

The Defendants were arrested and charged in the Southern District of Florida. (ECF No. 8.) All Defendants have pled guilty to Count 1 of the indictment, which charged each with conspiracy to possess a controlled substance aboard a vessel in violation of 46 U.S.C. § 70506(b). (ECF Nos. 8, 26, 29, 34, 41.) The Defendants now challenge this Court's subject-matter jurisdiction, arguing that § 70502(d)(1)(C) is both facially unconstitutional and unconstitutional as-applied where a vessel is interdicted in a foreign nation's exclusive economic zone.

## 2. Legal Standard

Under Federal Rule of Criminal Procedure 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." *See* Fed. R. Crim. P. 12(b)(1). Moreover, a "motion that the court lacks jurisdiction may be made at any time while the case is pending," including after guilty pleas have been entered. *See* Fed. R. Crim. P. 12(b)(2); *see also Class v. U.S*, 138 S.Ct. 798, 803–04 (2018) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face— the charge is one which the State may not constitutionally prosecute.") (quoting *Menna v. New York*, 423 U.S. 61, 63 & n.2 (1975)).

An indictment may be dismissed "only if there is an 'infirmity of law in the prosecution.'" *See U.S. v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991) (quoting *U.S. v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). When evaluating a motion to dismiss, courts will view the allegations of the indictment as true. *See id.*

## 3. Analysis

The Defendants raise two arguments in favor of dismissal: (1) that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional as it exceeds the bounds of customary international law implicit in the Felonies Clause and (2) that 46 U.S.C. § 70502(d)(1)(C) is unconstitutional as-applied as the Defendants were interdicted in Costa Rica's exclusive economic zone. The Court rejects both arguments.

***First***, the Defendants argue that while the Eleventh Circuit has upheld the constitutionality of the MDLEA on multiple occasions, the Eleventh Circuit has not decided whether § 70502(d)(1)(C) accords with any customary international law imbedded in the Felonies Clause. However, the Court finds that this argument is foreclosed by precedent.

The Constitution grants Congress the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10 (the "Felonies Clause"). Pursuant to this authority, Congress passed the Maritime Drug Law Enforcement Act ("MDLEA") in 1986, making it a federal crime for any person "on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *See* 46 U.S.C. § 70503(a); *see also U.S. v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006). A vessel is a "covered vessel" within the Act if, among others, it is "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(e)(1). In turn, a vessel is subject to the jurisdiction of the United States if, in relevant

part, the master of the vessel makes a claim of registry in a nation and the claimed nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See* 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C). Therefore, upon a nation's failure to confirm or deny a particular vessel's claimed nationality, the MDLEA recognizes that vessel as a "vessel without nationality"—or, put differently, stateless—permitting prosecution under U.S. law of any foreign national aboard the vessel.

The Defendants argue that the Felonies Clause is bound by "customary international law," which the Defendants contend does not recognize § 70502(d)(1)(C)'s definition of a "vessel without nationality." According to the Defendants, under international law, a verbal claim of nationality is "prima facie proof" of the vessel's nationality, and such proof cannot be rebutted, for jurisdictional purposes, by a nation's failure to confirm or deny the claim. Therefore, the argument goes, § 70502(d)(1)(C) unconstitutionally grants jurisdiction over foreign vessels that would not be considered stateless under international law. (ECF No. 47 at 12.)

The Defendants rely almost exclusively on a recent case from the First Circuit, which held that § 70502(d)(1)(C) exceeded the bounds of the Felonies Clause. *See U.S. v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). The court in *Davila-Reyes* concluded, after a review of various historical sources, that the Felonies Clause only permits punishment of crimes "committed by U.S. nationals or on vessels subject to U.S. jurisdiction *under international law*." *Id.* at 180 (emphasis added). And after holding that international law only recognizes two circumstances where a vessel may be deemed stateless ("when the vessel refuses to claim any nationality or when it claims more than one nationality"), the First Circuit held that § 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry—made in accordance with international law." *Id.* at 184, 187. Therefore, the First Circuit held that § 70502(d)(1)(C) conflicts with international law and exceeds the authority granted in the Felonies Clause. *See id.* at 193.

However, this Court is bound by the Eleventh Circuit, not the First Circuit. The Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause. *See U.S. v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."); *U.S. v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.") *Estupinan*, 453 F.3d at 1339 ("[W]e readily hold that the district court committed no error

in failing to *sua sponte* rule that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the MDLEA.").

While the Eleventh Circuit has not explicitly addressed the question of whether the Felonies Clause is bound by customary international law and whether the MDLEA's definition of stateless vessel in § 70502(d)(1)(C) exceeds international law, the Eleventh Circuit has held that whether a vessel is stateless under international law is an issue to be settled by the Executive branch. *See U.S. v. Hernandez*, 864 F.3d 1292, 1304 (11th Cir. 2017) (holding that the MDLEA provides that "any further jurisdictional complaint over that U.S. prosecution is to be handled by the executive branch, nation-to-nation, in the international arena"). In *Hernandez*, the defendants argued that the vessel at issue did not fall under the MDLEA, as while Guatemala did not confirm or deny that the vessel was of Guatemalan registry, the vessel was actually registered in Guatemala. *Id.* at 1298. But the Eleventh Circuit held that "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." *Id.* at 1299. For that reason, the issue of whether the vessel was "stateless under international law at the time of the criminal conduct" was irrelevant for judicial purposes, as Congress provided that the Executive branch would handle any jurisdictional complaints. *Id.* at 1304.

Therefore, even assuming that Congress's authority under the Felonies Clause is bound by customary international law, Congress did not exceed those boundaries in the MDLEA, as Congress provided for jurisdictional complaints over stateless vessels to be heard by the Executive. *See id.*; *see also U.S. v. Anchundia*, No. 1:21-00223-KD-B, 2022 WL 855561, at *2–3 (S.D. Ala. Mar. 22, 2022) (holding that "the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts" and declining to follow *Davila-Reyes*); *cf. Jones v. U.S.*, 137 U.S. 202, 224 (1890) (holding that certain factual jurisdictional determinations may be made by the Executive branch).

In any event, again assuming that the Felonies Clause is bound by customary international law, the MDLEA's extraterritoriality is further supported by the protective principle. The protective principle is a well-established rule under international law that "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security or could potentially interfere with the operation of its government functions." *See U.S. v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985). The Eleventh Circuit has repeatedly upheld the MDLEA's extraterritorial reach over foreign vessels under the protective principle. *See Campbell*, 743 F.3d at 810; *U.S. v. Persaud*, 605 F. App'x 791, 795 (11th Cir. 2015) (holding

that "universal and protective principles support [the MDLEA's] extraterritorial reach") (citing *Campbell*, 743 F.3d at 810). This provides another basis to find that the MDLEA accords with international law.[1] *See U.S. v. Barros*, No. 21-cr-20438, ECF No. 40 at 13 (S.D. Fla. Apr. 18, 2022) (Bloom, J.) (declining to follow *Davila-Reyes* and holding that "Congress did not overstep its authority in enacting the MDLEA under the Felonies Clause by violating international law because the protective principle of international law permits MDLEA's conferral of jurisdiction over vessels whose nationality cannot be confirmed").

As the Eleventh Circuit has repeatedly upheld the MDLEA as a valid exercise of power pursuant to the Felonies Clause, in accordance with international law, the Court applies this precedent and rejects the Defendants' facial challenge to the constitutionality of § 70502(d)(1)(C).

**Second**, the Defendants' as-applied challenge concerning the relation between exclusive economic zones and the high seas also fails. As noted above, the Felonies Clause only reaches felonies committed on the high seas. *See* U.S. Const. art. I, § 8, cl. 10; *see also Bellaizac-Hurtado*, 700 F.3d at 1257 (noting that "Congress possesses additional constitutional authority to restrict conduct on the high seas," including the Felonies Clause). The high seas are understood as "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *See U.S. v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) (quoting 33 C.F.R. § 2.05-1). In other words, "[o]utside the territorial sea are the high seas." *U.S. v. Louisiana*, 394 U.S. 11, 23 (1969). Territorial seas of a foreign nation generally extend up to twelve nautical miles from the coast. *See McPhee*, 336 F.3d at 1273. The Defendants argue that as they were intercepted in Costa Rica's exclusive economic zone, they were not caught on the high seas, and therefore the MDLEA cannot apply to them.

This argument boils down to whether a nation's exclusive economic zone constitutes part of that nation's territorial seas or whether such waters are part of the high seas. The exclusive economic zone—formally acknowledged in 1982 through the United Nations Convention on the Law of the Sea—"is an area beyond and adjacent to the territorial sea" of the subject nation, where that nation has special economic rights relating to the use, study, protection, and exploitation of natural resources. *See* United Nations Convention on the Law of

---

[1] Indeed, the First Circuit originally upheld the constitutionality of the MDLEA and § 70502(d)(1)(C) under the protective principle. *See U.S. v. Davila-Reyes*, 937 F.3d 57, 62 (1st Cir. 2019) (withdrawn) (holding that the "MDLEA is consistent with the 'protective principle' of international law"). However, that decision was later withdrawn once the panel determined that subsequent circuit case law "diminished the force of this circuit's precedent on the protective principle." *See Davila-Reyes*, 23 F.4th at 157. This Court is not aware of a similar diminishment of the protective principle in the Eleventh Circuit; rather, as explained above, the Eleventh Circuit has frequently cited to the protective principle as a basis for the MDLEA.

the Sea, Dec. 10, 1982, 21 I.L.M. 1245, 1280, Part V. Several courts, including in this district, have already held that a nation's exclusive economic zone remains part of the high seas and does not fall within the territorial waters of that nation. *See U.S. v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5–6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were in the high seas when interdicted in the Dominican Republic's exclusive economic zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *Dilbert v. U.S.*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by *McPhee*); *see also U.S. v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely part of the high seas where that nation has special economic rights and jurisdiction").

    This Court also holds, consistent with the United Nations and *Alfonso*, that a nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas. Therefore, the Court finds the MDLEA constitutional as-applied in this case, as the Defendants were interdicted while on the high seas and thus subject to criminal jurisdiction in the United States.

    In total, the Court holds that § 70502(d)(1)(C) is a constitutional exercise of power under the Felonies Clause, as it comports with international law, and that § 70502(d)(1)(C) is constitutional as-applied in this case, as a foreign nation's exclusive economic zone constitutes part of the high seas. For these reasons, the Court **denies** the Defendants' motion to dismiss. (**ECF No. 47.**)

    **Done and ordered** in Miami, Florida, on April 26, 2022.

_____
Robert N. Scola, Jr.
United States District Judge